IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**MELISSA M.,**

        **Plaintiff,**

v.                                   Civil Action 2:21-cv-31
                                          Magistrate Judge Kimberly A. Jolson

**COMMISSIONER OF**
**SOCIAL SECURITY,**

        **Defendant.**

## OPINION AND ORDER

Plaintiff, Melissa M., brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB"). The parties in this matter consented to the Magistrate Judge under 28 U.S.C. § 636(c). (Docs. 6, 7). For the following reasons, the Court **REVERSES** the Commissioner of Social Security's nondisability finding and **REMANDS** this case to the Commissioner under Sentence Four of § 405(g).

**I.    BACKGROUND**

Plaintiff protectively filed her application for DIB on June 14, 2018, alleging that she was disabled beginning December 30, 2016, due to heart condition (double bypass), depression, and high cholesterol. (Tr. 161–74, 201). After her application was denied initially and on reconsideration, the Administrative Law Judge (the "ALJ") held a telephone hearing on June 23, 2020. (Tr. 48–72). The ALJ denied benefits in a written decision on July 1, 2020. (Tr. 12–47). That became the final decision of the Commissioner when the Appeals Council denied review. (Tr. 1–6).

Plaintiff filed the instant case seeking a review of the Commissioner's decision on January 6, 2021 (Doc. 1), and the Commissioner filed the administrative record on July 19, 2021 (Doc. 14). The matter has been briefed and is ripe for consideration. (Docs. 17, 19, 20).

**A. Relevant Statements to the Agency and Hearing Testimony**

The ALJ summarized Plaintiff's hearing testimony as well as her statements to the agency:

[Plaintiff] graduated from high school in regular classes with no special education, repeated grades, and significant academic difficulties, and she reads, writes, speaks, and understands English (Exhibits 7F/2, 20F/8 and 13, 21F/5, and 2E/1 and 3, and testimony). There is no evidence of impaired intellectual functioning as documented by intelligence quotient scores or school records. [Plaintiff] knew her age, date of birth, and Social Security Number, and she responded correctly to some math problems, at the January 2019 psychological consultative examination (Exhibit 7F/5). [Plaintiff] stated at that time that she understood what was expected of her at jobs when she worked, at that time (Exhibit 7F/3). [Plaintiff] had almost 100% understandable speech at that time (Exhibit 7F/4). As discussed below, the evidence documents that [Plaintiff] frequently engages in activities that involve significant understanding, remembering, or applying information without appreciable or reported difficulties. [Plaintiff] demonstrated good judgment at different times (Exhibit 4F/3, 8, 11, and 14). [Plaintiff] had adequate insight, and no markedly impaired judgment, at the January 2019 psychological consultative examination (Exhibit 7F/5). [Plaintiff] denied a history of work quality and speed problems, at that time (Exhibit 7F/3). [Plaintiff] denied a history of work absenteeism and tardiness problems, at that time (Exhibit 7F/3). [Plaintiff] knew why some foods are cooked, as well as what to do if she found an envelope that was addressed and sealed with a new stamp, at that time (Exhibit 7F/5). [Plaintiff] did not demonstrate delusional beliefs or hallucinations at that time (Exhibit 7F/4). [Plaintiff] stated that she probably could independently seek services in the community, at that time (Exhibit 7F/5). [Plaintiff] presented with casual attire, appropriate dress, and satisfactory grooming and hygiene, at that time (Exhibit 7F/4). [Plaintiff] presented with appropriate grooming and hygiene, at different times (Exhibit 3F/6, 20, and 32). [Plaintiff] performs grooming, hygiene, and personal care activities such as bathing, caring for her hair, dressing, feeding herself, shaving, and using the toilet independently and without reminders (Exhibits 7F/5 and 4E/2-3). [Plaintiff] at least assists in caring for her youngest child, including getting up in the morning, playing with, feeding, and dressing (Exhibits 7F/2 and 5, and 4E/2). [Plaintiff] at least assists in caring for pets, including letting outside (Exhibit 4E/2). [Plaintiff] regularly consumes and prepares meals, and performs household chores and cleaning, such as dishes, dusting, laundry, sweeping, and vacuuming (Exhibits 7F/5, and 4E/2-3). [Plaintiff] leaves her residence daily, and she is able to go outside alone (Exhibit 4E/4). [Plaintiff] has a drivers' license, and she drives, as well as receives rides from others, to get to places

> she needs to go (Exhibits 7F/1 and 5, and 4E/4). [Plaintiff] reported moderate exercise at different times (Exhibits 4F/2, 20F/8 and 13, and 21F/5). [Plaintiff] described fixing up her deceased mother's home in April 2018 (Exhibit 6F/2). [Plaintiff] is able to shop in stores, and make purchases independently (Exhibits 7F/5 and 4E/4). [Plaintiff] performs money management activities such as counting change, handling savings accounts, paying bills, and using checkbooks and money orders (Exhibits 7F/5 and 4E/4). [Plaintiff] does not need reminders to manage her medication (Exhibit 4E/3). [Plaintiff] reported working at different times since the alleged onset date of disability, including from September to December 2017, as well as in June and July 2018 (Exhibits 6F/1, 3, and 7, 7F/2, 8F, 1E/4, 2D, 5D, 7D, and 8D, and testimony). In this context, it is noteworthy that [Plaintiff] understood and followed the hearing proceedings closely and fully without any appreciable difficulty and responded to questions in an appropriate manner.

(Tr. 24–25).

### B. Relevant Medical Evidence

Germane to the discussion below, the ALJ discussed Plaintiff's mental impairments as follows:

> The State Agency reviewing psychologists opined that [Plaintiff] has mild limitations in understanding, remembering, or applying information (Exhibits 1A/8 and 3A/7). The consultative psychologist opined that there was no indication during this evaluation that [Plaintiff] is unable to understand, remember, and follow one-step instructions, but her ability to understand, remember, and follow complex instructions could be compromised (Exhibit 7F/6). These opinions are inconsistent with and unsupported by the totality of the evidence, as discussed above, which documents that [Plaintiff] has no limitations in understanding, remembering, or applying information. In light of [Plaintiff]'s education, history of understanding what was expected of her at jobs when she worked, demonstrated almost 100% understandable speech, presentation at different times, and activities involving significant understanding, remembering, or applying information, as discussed above, there is no evidence that she has limitations in understanding, remembering, or applying information. However, in extending the benefit of all reasonable doubt, and in light of [Plaintiff] needing a word explained and soft speech at the January 2019 psychological consultative examination, as discussed below, the State Agency assessments are persuasive in understanding, remembering, or applying information. Accordingly, I find that [Plaintiff] has mild rather than no limitations in understanding, remembering, or applying information.

> ***

> [Plaintiff] denies problems getting along with authority figures, co-workers, family, friends, neighbors, supervisors, teachers, other students in school, and others, as

well as a history of firings due to inability to get along with others (Exhibits 7F/2-3 and 4E/6-7). [Plaintiff] denies a criminal legal history (Exhibit 7F/3). [Plaintiff] repeatedly presented as polite, with appropriate and normal affect, manner, and mood (Exhibits 3F/6, 20, and 32, 4F/3, 8, 11, and 14, 7F/3, 14F/6 and 11, 20F/9 and 15, and 21F/6). As discussed below, the evidence documents that [Plaintiff] frequently engages in activities that involve significant interacting with others without appreciable or reported difficulties. [Plaintiff] demonstrated good judgment at different times (Exhibit 4F/3, 8, 11, and 14). [Plaintiff] had adequate insight, and no markedly impaired judgment, at the January 2019 psychological consultative examination (Exhibit 7F/5). [Plaintiff] denied a history of work quality and speed problems, at that time (Exhibit 7F/3). [Plaintiff] denied a history of work absenteeism and tardiness problems, at that time (Exhibit 7F/3). [Plaintiff] did not demonstrate delusional beliefs or hallucinations at that time (Exhibit 7F/4). [Plaintiff] stated that she probably could independently seek services in the community, at that time (Exhibit 7F/5). [Plaintiff] is able to live with others (Exhibits 7F/2 and 4E/1). [Plaintiff] socializes with family daily (Exhibit 4E/5). [Plaintiff] has contact and good relationships with two of her children (Exhibit 7F/2). [Plaintiff] at least assists in caring for her youngest child, including getting up in the morning, playing with, feeding, and dressing (Exhibits 7F/2 and 5, and 4E/2). [Plaintiff] leaves her residence daily, and she is able to go outside alone (Exhibit 4E/4). [Plaintiff] has a drivers' license, and she drives, as well as receives rides from others, to get to places she needs to go (Exhibits 7F/1 and 5, and 4E/4). [Plaintiff] reported moderate exercise at different times (Exhibits 4F/2, 20F/8 and 13, and 21F/5). [Plaintiff] described fixing up her deceased mother's home in April 2018 (Exhibit 6F/2). [Plaintiff] is able to shop in stores, and make purchases independently (Exhibits 7F/5 and 4E/4). [Plaintiff] reported working at different times since the alleged onset date of disability, including from September to December 2017, as well as in June and July 2018 (Exhibits 6F/1, 3, and 7, 7F/2, 8F, 1E/4, 2D, 5D, 7D, and 8D, and testimony). In this context, it is noteworthy that [Plaintiff] was socially appropriate at the hearing and in fact was quite polite and cooperative.

The State Agency reviewing psychologists opined that [Plaintiff] has mild limitations in interacting with others (Exhibits 1A/8 and 3A/7). The consultative psychologist opined that there was no indication during this evaluation that [Plaintiff] would experience difficulty getting along with others (Exhibit 7F/6). The consultative psychologist's opinions are more consistent with and supported by the totality of the evidence, as discussed above, which documents that [Plaintiff] has no limitations in interacting with others. In light of [Plaintiff]'s abilities for getting along with authority figures, co-workers, family, friends, neighbors, supervisors, teachers, other students in school, and others, presentation at different times, activities involving significant interacting with others, and absence of firings due to inability to get along with others and a criminal legal history, as discussed above, the evidence could support a determination that she has no limitations in interacting with others. However, in extending the benefit of all reasonable doubt, and in light of [Plaintiff]'s presentation as tearful at the January 2019 psychological

4

consultative examination, as discussed below, the State Agency assessments are persuasive in interacting with others. Accordingly, I find that [Plaintiff] has mild rather than no limitations in interacting with others.

[Plaintiff] has moderate limitations in concentrating, persisting, or maintaining pace. More specifically, concentrating, persisting, or maintaining pace refers to the abilities to focus attention on work activities and stay on task at a sustained rate. Examples include: initiating and performing a task that you understand and know how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day. These examples illustrate the nature of this area of mental functioning. We do not require documentation of all of the examples. [Plaintiff] admittedly pays attention well, finishes activities she starts, and is good at following verbal and written instructions (Exhibit 4E/6). [Plaintiff] repeatedly presented as alert, awake, and oriented (Exhibits 3F/6, 21, and 32, 4F/3, 8, 11, and 14, 6F/13, 14F/6 and 11, 20F/9 and 15, and 21F/6). [Plaintiff] was oriented at the January 2019 psychological consultative examination (Exhibit 7F/5). [Plaintiff] accurately recalled five digits forward, three digits backward, and three of three items after a brief delay, performed a serial subtraction exercise, and interpreted at least two proverbs, at that time (Exhibit 7F/5). As discussed below, the evidence documents that [Plaintiff] frequently engages in activities that involve significant concentrating, persisting, or maintaining pace without appreciable or reported difficulties. [Plaintiff] demonstrated good judgment at different times (Exhibit 4F/3, 8, 11, and 14). [Plaintiff] had adequate insight, and no markedly impaired judgment, at the January 2019 psychological consultative examination (Exhibit 7F/5). [Plaintiff] denied a history of work quality and speed problems, at that time (Exhibit 7F/3). [Plaintiff] denied a history of work absenteeism and tardiness problems, at that time (Exhibit 7F/3). [Plaintiff] knew why some foods are cooked, as well as what to do if she found an envelope that was addressed and sealed with a new stamp, at that time (Exhibit 7F/5). [Plaintiff] did not demonstrate delusional beliefs or hallucinations at that time (Exhibit 7F/4). [Plaintiff] stated that she probably could independently seek services in the community, at that time (Exhibit 7F/5). [Plaintiff] presented with casual attire, appropriate dress, and satisfactory grooming and hygiene, at that time (Exhibit 7F/4). [Plaintiff] presented with appropriate grooming and hygiene, at different times (Exhibit 3F/6, 20, and 32). [Plaintiff] performs grooming, hygiene, and personal care activities such as bathing, caring for her hair, dressing, feeding herself, shaving, and using the toilet independently and without reminders (Exhibits 7F/5 and 4E/2-3). [Plaintiff] at least assists in caring for her youngest child, including getting up in the morning, playing with, feeding, and dressing (Exhibits 7F/2 and 5, and 4E/2). [Plaintiff] at least assists in caring for pets, including letting outside (Exhibit 4E/2). [Plaintiff] regularly consumes and prepares meals, and performs household chores and cleaning, such as dishes, dusting, laundry, sweeping, and vacuuming (Exhibits

7F/5, and 4E/2-3). [Plaintiff] leaves her residence daily, and she is able to go outside alone (Exhibit 4E/4). [Plaintiff] has a drivers' license, and she drives, as well as receives rides from others, to get to places she needs to go (Exhibits 7F/1 and 5, and 4E/4). [Plaintiff] reported moderate exercise at different times (Exhibits 4F/2, 20F/8 and 13, and 21F/5). [Plaintiff] described fixing up her deceased mother's home in April 2018 (Exhibit 6F/2). [Plaintiff] is able to shop in stores, and make purchases independently (Exhibits 7F/5 and 4E/4). [Plaintiff] performs money management activities such as counting change, handling savings accounts, paying bills, and using checkbooks and money orders (Exhibits 7F/5 and 4E/4). [Plaintiff] does not need reminders to manage her medication (Exhibit 4E/3). [Plaintiff] reported working at different times since the alleged onset date of disability, including from September to December 2017, as well as in June and July 2018 (Exhibits 6F/1, 3, and 7, 7F/2, 8F, 1E/4, 2D, 5D, 7D, and 8D, and testimony). In this context, it is noteworthy that [Plaintiff] attended to and concentrated on the hearing proceedings closely and fully without any appreciable difficulty, and she responded to questions in an appropriate manner.

The State Agency reviewing psychologists opined that [Plaintiff] has moderate limitations in concentrating, persisting, or maintaining pace (Exhibits 1A/8 and 3A/7). The consultative psychologist did not opine that [Plaintiff] has limitations in sustaining concentration and persisting in work related activity at a reasonable pace, but noted that [Plaintiff] demonstrated slow pace and was slow to respond at times during the evaluation (Exhibit 7F/6-7). These opinions are inconsistent with and unsupported by the totality of the evidence, as discussed above, which documents that [Plaintiff] has little or no limitations in concentrating, persisting, or maintaining pace. In light of [Plaintiff]'s abilities for paying attention, finishing activities she starts, and following verbal and written instructions, activities involving significant concentrating, persisting, or maintaining pace, presentation at different times, and absence of a history of work quality and speed problems, as discussed above, the evidence could support a determination that she has no or only mild limitations in concentrating, persisting, or maintaining pace. However, in extending the benefit of all reasonable doubt, and in light of [Plaintiff] demonstrating poor eye contact and psychomotor retardation at the January 2019 psychological consultative examination, as discussed below, the State Agency assessments are persuasive in concentrating, persisting, or maintaining pace. Accordingly, I find that [Plaintiff] has moderate rather than no or only mild limitations in concentrating, persisting, or maintaining pace.

***

[Plaintiff] demonstrated good judgment at different times (Exhibit 4F/3, 8, 11, and 14). [Plaintiff] had adequate insight, and no markedly impaired judgment, at the January 2019 psychological consultative examination (Exhibit 7F/5). [Plaintiff] denied a history of work quality and speed problems, at that time (Exhibit 7F/3). [Plaintiff] denied a history of work absenteeism and tardiness problems, at that time (Exhibit 7F/3). [Plaintiff] knew why some foods are cooked, as well as what to do

if she found an envelope that was addressed and sealed with a new stamp, at that time (Exhibit 7F/5). [Plaintiff] did not demonstrate delusional beliefs or hallucinations at that time (Exhibit 7F/4). [Plaintiff] stated that she probably could independently seek services in the community, at that time (Exhibit 7F/5). [Plaintiff] presented with casual attire, appropriate dress, and satisfactory grooming and hygiene, at that time (Exhibit 7F/4). [Plaintiff] presented with appropriate grooming and hygiene, at different times (Exhibit 3F/6, 20, and 32). [Plaintiff] performs grooming, hygiene, and personal care activities such as bathing, caring for her hair, dressing, feeding herself, shaving, and using the toilet independently and without reminders (Exhibits 7F/5 and 4E/2-3). [Plaintiff] is able to live with others (Exhibits 7F/2 and 4E/1). [Plaintiff] socializes with family daily (Exhibit 4E/5). [Plaintiff] has contact and good relationships with two of her children (Exhibit 7F/2). [Plaintiff] at least assists in caring for her youngest child, including getting up in the morning, laying with, feeding, and dressing (Exhibits 7F/2 and 5, and 4E/2). [Plaintiff] at least assists in caring for pets, including letting outside (Exhibit 4E/2). [Plaintiff] regularly consumes and prepares meals, and performs household chores and cleaning, such as dishes, dusting, laundry, sweeping, and vacuuming (Exhibits 7F/5, and 4E/2-3). [Plaintiff] leaves her residence daily, and she is able to go outside alone (Exhibit 4E/4). [Plaintiff] has a drivers' license, and she drives, as well as receives rides from others, to get to places she needs to go (Exhibits 7F/1 and 5, and 4E/4). [Plaintiff] reported moderate exercise at different times (Exhibits 4F/2, 20F/8 and 13, and 21F/5). [Plaintiff] described fixing up her deceased mother's home in April 2018 (Exhibit 6F/2). [Plaintiff] is able to shop in stores, and make purchases independently (Exhibits 7F/5 and 4E/4). [Plaintiff] performs money management activities such as counting change, handling savings accounts, paying bills, and using checkbooks and money orders (Exhibits 7F/5 and 4E/4). [Plaintiff] does not need reminders to manage her medication (Exhibit 4E/3). [Plaintiff] reported working at different times since the alleged onset date of disability, including from September to December 2017, as well as in June and July 2018 (Exhibits 6F/1, 3, and 7, 7F/2, 8F, 1E/4, 2D, 5D, 7D, and 8D, and testimony). The State Agency reviewing psychologists opined that [Plaintiff] has moderate limitations in adapting or managing oneself (Exhibits 1A/8 and 3A/7). The consultative psychologist opined that [Plaintiff]'s ability to respond appropriately to work pressures in a work setting would be affected by her mental health symptomatology, which makes it unlikely that she would be able to deal with stress and pressures effectively (Exhibit 7F/7). These opinions are inconsistent with and unsupported by the totality of the evidence, as discussed above, which documents that [Plaintiff] has a high level of adaptive functioning with little or no apparent limitations in adapting or managing oneself. In light of [Plaintiff]'s demonstrated good judgment at different times, abilities for managing medication and self-care without reminders, at least assisting in caring for her child, presentation at different times, activities involving significant adapting or managing oneself, and absence of delusional beliefs, hallucinations, and history of work absenteeism and tardiness problems, the evidence could support a determination that she has no or only mild limitations in adapting or managing oneself. However, in extending the benefit of all reasonable doubt, and in light of [Plaintiff]'s alleged problems with handling

changes in routine and stress, as discussed below, the State Agency assessments are persuasive in adapting or managing oneself. Accordingly, I find that [Plaintiff] has moderate rather than no or only mild limitations in adapting or managing oneself.

(Tr. 25–29).

### C. The ALJ's Decision

The ALJ found that Plaintiff meets the insured status requirement through December 31, 2022 and has not engaged in substantial gainful employment since December 30, 2016. (Tr. 17). The ALJ determined that Plaintiff has the following severe combination of impairments: left shoulder degenerative joint disease, left elbow ulnar nerve entrapment, bilateral carpal tunnel syndrome ("CTS"), atherosclerotic heart disease, ischemic cardiomyopathy, hypertension, obstructive sleep apnea ("OSA"), restrictive lung disease, obesity, and depressive disorder. (Tr. 17–18). Still, the ALJ found that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 20).

As to Plaintiff's residual functional capacity ("RFC"), the ALJ concluded:

> After careful consideration of the entire record, the [ALJ] finds that [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567 (a). She can stand and/or walk for up to 2 hours in an 8-hour workday. She can sit for up to 8 hours in an 8-hour workday. Fingering, handling, and reaching in all directions other than overhead, is limited to no more than frequently. Climbing ramps and stairs, crawling, and exposure to extreme heat and concentrated irritants such as dust, fumes, odors, and other pulmonary irritants, is limited to no more than occasionally. She cannot climb ladders, ropes, and scaffolds, and reach overhead, and must avoid all exposure to workplace hazards such as unprotected heights or dangerous moving mechanical parts. Mentally, the claimant retains the capacity to perform routine duties with work that is not at a production rate pace such as with assembly line work. She can tolerate occasional changes in duties and work setting.

(Tr. 30 (citation to footnote omitted)).

Upon "careful consideration of the evidence," the ALJ found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [her] symptoms are not sufficiently

8

supported by the medical evidence and other evidence in the record." (Tr. 31).

Relying on the vocational expert's testimony, the ALJ found that Plaintiff cannot perform her past relevant work as an auction clerk or order clerk. (Tr. 40–41). Yet, considering her age, education, work experience, and the above RFC, the ALJ found that Plaintiff could perform jobs that exist in significant numbers in the national economy, such as a document preparer, sorter, or final assembler. (Tr. 41–42). He thus concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, at any time since December 30, 2016. (Tr. 43).

## II.     STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

9

### III. DISCUSSION

In her Statement of Errors, Plaintiff contends that the RFC determination is not supported by substantial evidence because (1) the ALJ improperly evaluated the opinion of consultative examiner Michele Evans, Ph.D.; and (2) the ALJ improperly developed the record with respect to Plaintiff's functional limitations from her severe left shoulder, left elbow, and bilateral carpal tunnel syndrome impairments. (Docs. 17 and 20).

#### A. Determination of Mental RFC - Dr. Evans' Opinion

A claimant's RFC is an assessment of "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1) (2012). A claimant's RFC assessment must be based on all the relevant evidence in his or her case file. *Id*. The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings.[1] 20 C.F.R. § 404.1513(a)(1)– (5). Regarding two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [Plaintiff]'s medical sources." 20 C.F.R. § 404.1520c(a). Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with [Plaintiff]"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other

---

[1] The regulations define prior administrative findings:

> A prior administrative finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review (see § 416.1400) in your current claim based on their review of the evidence in your case record . . .

§ 404.1513(a)(2), (5).

10

evidence in the claim or an understanding of [the SSA's] disability programs policies and evidentiary requirements." § 404.1520c(c)(1)–(5).

There are five factors, but supportability and consistency are the most important; and the ALJ must explain how they were considered. § 404.1520c(b)(2). Though an ALJ may discuss how he or she evaluated the other factors, it is not required. *Id*. If, however, an ALJ "find[s] that two or more medical opinions or prior administrative findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ will] articulate how [he or she] considered the other most persuasive factors . . . . . " § 404.1520c(b)(3).

Here, Plaintiff contends that the mental RFC determination is not supported by substantial evidence because the ALJ improperly evaluated the functional limitations opinion of consultative examiner Michele Evans, Ph.D. Though Plaintiff makes several arguments about how the ALJ evaluated Dr. Evans' opinion, Plaintiff focuses most on her ability to understand complex instructions in a work setting under stress. (Doc. 17 at 10–18). Likewise focusing on that limitation, the Undersigned agrees that the ALJ's evaluation was insufficient.

In relevant part, Dr. Evans opined:

> The claimant reported that she is able to understand, remember, and follow one-step instructions; and there was no indication during this evaluation that she is unable to do so. When asked if she can understand complex instructions, she said, "I think so. I haven't had any in a couple of years." When asked if she can remember and follow complex instructions, she stated, "I think so, but again I haven't had any in two years." Her ability to do this could be compromised given her performance during a brief assessment of cognitive functioning that was part of this evaluation. The claimant is a high school graduate. She denied any history of substantial academic difficulties. She states that she was able to understand what was expected of her at her jobs. The term cues had to be explained for the claimant. Here, she was able to recall only five digits forward and only three digits backwards. She recalled all three of the words presented to her after a brief delay. She was able to correctly complete a serial seven subtraction task. She was able to correctly respond to some arithmetic problems.

11

(Tr. 398).

When discussing Dr. Evans' opinions, the ALJ determined that they were "persuasive in assessing [Plaintiff]'s mental functional limitations, restrictions, and residual functional capacity as of the alleged onset date of disability (Exhibit 7F/6-7)." (Tr. 39). And, later, the ALJ reiterated that Dr. Evans' opinions were "overall persuasive in assessing [Plaintiff]'s mental functional limitations, restrictions, and residual functional capacity as of the alleged onset date of disability." (Tr. 40). Yet the ALJ rejected Dr. Evans' conclusion that Plaintiff would struggle with complex instructions "given her education." (Tr. 39). On the precise issue of whether Plaintiff could perform complex tasks in a work setting, the ALJ said nothing more with regard to Dr. Evans' assessment.

Plaintiff challenges the ALJ's evaluation as deficient under the supportability requirement, arguing that it is "unclear how the ALJ reached his conclusion that Plaintiff is able to perform complex tasks simply by virtue of her educational history . . . despite [] probative evidence to the contrary." (Doc. 20 at 2).

Dr. Evans personally evaluated Plaintiff and noted, *inter alia*, that Plaintiff was tearful or crying through much of the evaluation; displayed anxious behavior by picking at her nail and boot repeatedly; made poor eye contact; and evidenced "psychomotor retardation." (Tr. 395–96). The ALJ addressed none of these points when discounting Dr. Evans' opinion. Instead, the ALJ perfunctorily noted Plaintiff's education. Dr. Evans expressly stated Plaintiff's high school graduation without "substantial academic difficulties" (Tr. 398), but still found Plaintiff's ability to follow complex instructions "could be compromised." (*Id.*). So Dr. Evans came to her conclusions with knowledge of Plaintiff's academic background. The ALJ did not explain how a high school education undercuts Dr. Evans' conclusion with regard to Plaintiff's limitation in this

12

area. And it is not clear to the Undersigned. Thus, the ALJ's supportability analysis was lacking. *See* 20 C.F.R. § 404.1520c(c)(1); *see also Revisions to Rules Regarding Medical Evidence*, 82 Fed. Reg. 5844, 5853 (defining supportability as "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation").

Turning to consistency, Plaintiff says that Dr. Evans' opinion is consistent with the medical records across providers. (*See* Doc. 17 at 16–17). The Undersigned agrees that Dr. Evans' opinion has the support identified. More important, the ALJ did not explain how Dr. Evans' conclusion was contrary to other medical records, which was required when discounting Dr. Evans' opinion. Still more, the state agency reviewers, whom the ALJ credited, found that Plaintiff would be "moderately limited" in her ability to carry out detailed instructions. (*See* Tr. 101). This conclusion is similar to Dr. Evans', but the ALJ made no mention of it when rejecting Dr. Evans' opinion. Notably, at times in his opinion, the ALJ even appears to acknowledge that Plaintiff has at least mild limitations when it comes to following one- or two-step oral instructions. (*See* Tr. 24). Given that Dr. Evans' conclusion has this support in the record, the ALJ's consistency analysis was lacking.

Generally speaking, the Commissioner defends the ALJ's analysis by citing Plaintiff's reported daily living. (Doc. 19 at 7–8). Most of these activities, like using the toilet independently and vacuuming, have little to do with following complex instructions in a work environment, especially under stress or pressure. The Commissioner also notes that Plaintiff did not seek mental health treatment. But this was not a reason the ALJ gave for discounting Dr. Evans' opinion.

Finally, the Commissioner appears to argue that the ALJ did make accommodations for problems handling work pressures and stressors by limiting Plaintiff to work with routine duties, no production rate pace, and no more than occasional changes. (Tr. 39–40). But the ALJ did not

13

offer this as an accommodation for an inability to follow complex instructions. Nor did the ALJ ask the vocational expert whether the assessed RFC would exclude jobs requiring Plaintiff to follow complex instructions. Further, based upon what the ALJ wrote—that he was rejecting Dr. Evans' conclusion regarding complex instructions—it appears that the ALJ did not intend such an accommodation. At base, the ALJ did not "build an accurate and logical bridge between the evidence and his conclusion'" regarding the types of instruction Plaintiff could follow in a work setting. *Davis v. Commissioner of Soc. Sec.*, No. 2:19-CV-265, 2019 WL 5853389, at *5 (S.D. Ohio Nov. 8, 2019), *report and recommendation adopted*, No. 2:19-CV-265, 2020 WL 1482318 (S.D. Ohio Mar. 27, 2020) (quoting *Waye v. Comm'r of Soc. Sec.*, No. 1:18-CV-201, 2019 WL 364258, at *5 (S.D. Ohio Jan. 30, 2019), *report and recommendation adopted*, No. 1:18CV201, 2019 WL 718542 (S.D. Ohio Feb. 20, 2019)). So remand is required.

## IV. CONCLUSION

Based on the foregoing, the Court **REVERSES** the Commissioner's non-disability finding and **REMANDS** this case to the Commissioner under Sentence Four of § 405(g).

IT IS SO ORDERED.

Date:  March 24, 2022                                    /s/ Kimberly A. Jolson
                                                         KIMBERLY A. JOLSON
                                                         UNITED STATES MAGISTRATE JUDGE